CRAWFORD and others vs. EARL.

CONTRACT: EVIDENCE: DAMAGES. (1) *Oral agreement inadmissible to vary option allowed defendant by written contract.* (2, 3) *When evidence of inferior quality of goods not admissible in action for contract price.* (4) *Rule of damages the contract price, where plaintiffs have done all required.*

1. By a written contract between the parties, defendant ordered fruit trees from plaintiffs, to be delivered on a day and at a price named, but, as to certain of said trees, reserved for thirty days the right to countermand such order. *Held,* that, in an action for the value of the trees, he could not show (to relieve himself from the written contract) a prior or contemporaneous *oral agreement* between himself and plaintiffs, by which the agent of the latter was to call *at defendant's house* within four weeks, to give defendant an opportunity to countermand his order, and that the agent failed to call.

2. When plaintiffs tendered to defendant the trees in question, he refused to receive them, *solely* on the ground that he had not ordered them, or had countermanded the order. Plaintiffs deposited the trees in a suitable place, for defendant, and afterwards exercised no control over them. The answer avers nothing as to the quality of the trees; but on the trial defendant offered to show that they were not such as ordered, but of inferior quality. *Held,* that there was no error in rejecting the evidence.

3. *Quære* whether, under the circumstances, defendant could be heard to object that the trees were not merchantable, even if he had set up that defense in the answer.

4. Plaintiffs having done all that their contract required, to vest the title of the trees in defendant, the measure of their damages is the contract price of the trees.

APPEAL from the Circuit Court for *Jefferson* County.

The plaintiffs are copartners in the nursery business, and brought this action to recover the price of a quantity of trees alleged to have been sold and delivered by them to the defendant upon his written order therefor, as follows :

" Dec. 23d, 1874. This certifies that I have purchased of *Crawford Bros. & Co.,* through their agent *S. C. Lamb,* the following trees and plants at the prices annexed. Said trees and

plants to be delivered from the nurseries of *Crawford Bros. & Co.*, Waupun, Wis., at Jefferson, in April or May next, to be paid for on delivery.

"Apples : 20 Duchess, 10 Fameuse, 5 Sops of Wine, 10 St. Lawrence, 400 Ben Davis, 5 Fall Stripe, 5 Wine Saps, 5 Talman Sweet, 5 R. Astrachan, 5 Tetofski, 10 Golden Russett, 10 Perry Russett, 10 L. Romanite, 2 Trans., 2 Hislop, 2 Golden Sweet Crab, 2 F. Beauty, 2 Bartlett, 12 Cherry, 12 W. Grape, 2 Mountain Ash, valued at $97.50. These trees are to be nice. The 500 apple trees the subscriber reserves the right to countermand the order for 30 days from date.    A. R. EARL."

The answer of the defendant denies each and every allegation of the complaint, and "further alleges that the said written contract referred to in the complaint, was made and entered into by the defendant and *S. C. Lamb*; that subsequent thereto, and prior to shipping said trees, the defendant and the said *S. C. Lamb* entered into a verbal agreement, whereby the said written agreement was to be disregarded, and the said trees and shrubbery were not to be shipped to this defendant, and the said written agreement was to have no effect, until said *Lamb* should call at the house of said defendant in the town of Aztalan, Jefferson county, and see the said defendant, and also see if he desired to have said order or written agreement complied with on the part of the plaintiffs; and that, disregarding said verbal agreement, said *Lamb* failed to call and see the said defendant."

It was proved on the trial that the plaintiffs accepted the defendant's order, and, on the 9th of May, 1875, tendered the trees described in it to the defendant at Jefferson, who refused to accept them, on the sole ground that he had not ordered them, or, if he had done so, had countermanded the order. The plaintiffs left the trees at Jefferson for the defendant, and notified him of the place where they were left, and since that time have exercised no control over them. The defendant never received them.

On the trial, the court admitted testimony, against the objection of the plaintiffs, tending to prove that when the order for the trees was given, *Mr. Lamb*, one of the plaintiffs, who received the order, promised to be at defendant's house in four weeks, to give the latter an opportunity to countermand the order if he chose to do so, and that *Mr. Lamb* failed to go there as he agreed. On the subject of this conversation there is a conflict in the testimony. The court instructed the jury, however, that the contract between the parties was all included in the written order, and that the same could not be altered or modified by proof of negotiations and conversations between the parties at the time of, or prior to, the signing and delivery of the order, there being no pretense that the order was obtained by fraud.

The defendant first attempted to countermand the order for the trees by a letter written for him to the plaintiffs, bearing date February 10, 1875, being forty-nine days after the order was given. On receiving such letter, the plaintiffs promptly notified the defendant that they should hold him to his contract.

The defendant offered to prove by a witness produced by him, that such witness had examined the trees delivered by the plaintiffs at Jefferson, and that they were of inferior quality, many of them being worthless. The court refused to receive the offered evidence, on the sole ground that it was incompetent under the pleadings.

The court further instructed the jury that it was competent for the plaintiffs to deliver, or offer to deliver, the trees pursuant to the contract, and hold the defendant for the contract price, whether he accepted them or not.

The jury returned a verdict for the plaintiffs for the contract price of the trees; a motion for a new trial was denied; and judgment was rendered pursuant to the verdict. The defendant appealed from the judgment.

*V. W. Seeley*, for appellant, argued that either party might

rescind a contract, if it were done within a reasonable time, and without harm to either party. *Ganson v. Madigan*, 13 Wis., 67. The written order in this case was not, in itself, an absolute sale of the trees, but only an agreement to buy and sell at a certain time, which could only be complete upon an actual delivery and acceptance. And the court erred in not allowing defendant to show the quality and condition of the trees upon their arrival at Jefferson. Certainly under a general denial defendant can show that the trees delivered were not such as ordered, if ordered at all. And it is competent to show a contemporaneous or subsequent parol agreement which controls a written agreement. *Jones v. Keyes*, 16 Wis., 562; *Hubbard v. Galusha*, 23 id., 398; *Ward v. Perrigo*, 33 id., 143. Contemporaneous agreements between the same parties, relating to the same subject matter, are to be taken together, and construed as one instrument, for the purpose of determining the character of the transaction and the intention of the makers. *Norton v. Kearney*, 10 Wis., 443.

*Eli Hooker*, for respondent, argued that where the contract is in writing, all prior or contemporaneous parol agreements merge in the written one, and every condition should appear therein. *Davis v. Shields*, 26 Wend., 341; *Cooper v. Tappan*, 4 Wis., 362. In this case the parties themselves stipulated in the written contract the terms of the countermand, and all the terms of the contract were merged in the writing. *Merriam v. Field*, 24 Wis., 640. 2. As to the measure of damages, the rule as laid down in *Ganson v. Madigan*, 13 Wis., 67, is, that " where a vendor has actually taken all the steps necessary to vest the title to the goods sold in the vendee, he may sue for goods sold and delivered, and recover the contract price." 3. The testimony offered as to the quality of the trees was inadmissible under the pleadings. Under our present practice we are entitled to be apprised of the precise grounds upon which the opposite party relies. *Gregory v. Hart*, 7 Wis., 532; *Babb v. Mackey*, 10 id., 371.

LYON, J.   1. It is clear that the signing of the order for the trees by the defendant, the delivery thereof to one of the plaintiffs, and its acceptance by the latter, constitutes a valid contract of purchase and sale between the parties on the terms and conditions expressed in such order.   It is also clear that the defendant failed in his attempt to countermand the order, and that the contract contained therein is binding upon him, unless it is competent for him to show that, prior to or at the time the order was thus given and accepted, the plaintiff *Lamb* agreed to go to the defendant's house within four weeks, or thirty days after the contract was made, to give the latter the opportunity to countermand the order, and that *Lamb* failed to go there.   The learned circuit judge held that evidence of such alleged contemporaneous parol agreement was insufficient to relieve the defendant from the obligations of the written contract.   This ruling is sustained by repeated decisions of this court.   See *Cooper v. Tappan*, 4 Wis. (2d ed.), 376, and subsequent cases cited in note by Vilas & Bryant on p. 387.   The cases in this court cited to sustain the opposite doctrine only hold that payment or failure of consideration, in whole or in part, of a note or other written contract, may be proved by parol, and that evidence of a cotemporaneous parol agreement as to the *manner* in which payment shall or may be made, is admissible.   None of these cases hold that where, in a written contract, a certain option is given to one of the parties, such party may show that when the contract was made it was verbally agreed that he should have another and more favorable option.   We conclude, therefore, that the defendant is bound by the contract expressed in the order.

2. The next question is, whether evidence of the inferior quality of the trees delivered at Jefferson should have been received.   We are inclined to think that the judge was right in holding the evidence inadmissible under the pleadings.   At any rate, it seems to us that if the defendant intended to rely upon the inferior quality of the trees as a defense, either he

Crawford and others vs. Earl.

should have pleaded that defense, or he should have refused to receive the trees for the reason that they were not merchantable. He did neither, and the plaintiffs came to the trial without any notice or intimation that such defense would be attempted. Under these circumstances, it would be manifestly unjust to permit the defendant to spring such defense at the trial.

Indeed, it is doubtful whether the defendant, after failing to make any objection to the quality of the trees when tendered, but refusing to receive them for other reasons, can now be heard to object that the trees were not merchantable. We do not determine this question, preferring to rest our decision on the grounds above indicated, but will suggest that the case may be analogous to a tender of money in discharge of a contract or other liability. Formerly, when debts were payable in coin, a tender of bank bills was always held good, unless refused because the tender was not made in coin. Is there any difference in the principle of the two cases?

3. The remaining question is, whether the court gave the correct rule of damages. The plaintiffs did all that the contract required to vest the title to the trees in the defendant; and the cases in this and other courts cited by their counsel abundantly prove that the contract price of the trees is the true measure of damages. And so the jury were instructed.

*By the Court.*— The judgment of the circuit court is affirmed.

RYAN, C. J., took no part in the decision of this cause.